BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| *IN RE* Varsity Spirit Athlete Abuse Litigation, | )  MDL: 3077<br>)<br>) |

**OMNIBUS REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO TRANSFER RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs respectfully submit this omnibus reply in support of their motion, pursuant to 28 U.S.C. § 1407 and 6.1(d) of the JPML Rules, to centralize seven related and overlapping RICO actions filed on behalf of twenty-one (21) different plaintiffs (the "Scheduled Actions"), along with any subsequently filed related actions, before a single judge.

**I.   Common Issues of Fact and Questions of Law Weigh in Favor of Consolidation.**

Defendants in the Scheduled Actions have universally opposed Plaintiffs' motion to consolidate pursuant to Section 1407. Generally, Defendants contend the Scheduled Actions are primarily personal injury actions, local in nature, and common issues do not predominate sufficient for this Panel to consolidate for pretrial proceedings. Contrary to Defendants' position, this Panel has consolidated numerous matters where the cases include both common as well as individualized issues. As the Panel has previously observed, "[a]lmost all injury litigation involves questions of causation that are case- and plaintiff-specific. Those differences are not an impediment to centralization where common questions of fact predominate." *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F.Supp.3d 1402, 1403 (J.P.M.L. 2014); *In re Profemur Hip Implant Prods. Liab. Litig.*, 481 F. Supp. 3d 1350, 1351–52 (J.P.M.L. Aug. 7, 2020).

Defendants' position seeks to recast the four-corners of the pleadings in these cases. As set forth in Plaintiffs' memorandum in support of consolidation, the Scheduled Actions all allege

1

violations of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. § 2255, and civil RICO provisions 18 U.S.C. §§ 1965(c) and 1965(d) arising out of an alleged scheme to create a network of child-athletes that resulted in pervasive athlete abuse and mistreatment. The Scheduled Actions present common questions of fact as to whether Plaintiffs were fraudulently deprived of their property and other economic interests related to this scheme.

In *In re National Prescription Opiate Litigation*, 290 F. Supp. 3d 1375 (J.P.M.L 2017), this Panel consolidated actions against drug manufacturers and pharmacies where common questions of fact existed related to federal RICO claims and claims arising out of the Controlled Substances Act. In addition to the common statutory claims, these cases also presented a number of unique claims arising under individual state laws. In centralizing the litigation, this Panel noted:

> Plaintiffs in the actions before us are cities, counties and states that allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed (directly and through key opinion leaders) these drugs to physicians, and/or (2) distributors failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates. All actions involve common factual questions about, *inter alia*, the manufacturing and distributor defendants' knowledge of and conduct regarding the alleged diversion of these prescription opiates, as well as the manufacturers' alleged improper marketing of such drugs. Both manufacturers and distributors are under an obligation under the Controlled Substances Act and similar state laws to prevent diversion of opiates and other controlled substances into illicit channels. Plaintiffs assert that defendants have failed to adhere to those standards, which caused the diversion of opiates into their communities. Plaintiffs variously bring claims for violation of RICO statutes, consumer protection laws, state analogues to the Controlled Substances Act, as well as common law claims such as public nuisance, negligence, negligent misrepresentation, fraud and unjust enrichment.

*Id.*, 290 F.3d at 1378.

Here, Plaintiffs allege that the Varsity defendants, through top-down control of Defendants USASF and USA Cheer, represented to athletes that Defendants' network offered a superior

product: a private cheerleading environment which Defendants policed to reduce the risk of abuse. Plaintiffs allege Defendants, through these promises, induced Plaintiffs to compete in the network and to remit substantial annual fees and associated costs to participate in this network of "certified" coaches, gyms, and vendors who also paid to be a part of the network.

Plaintiffs allege that the Defendants made material misrepresentations about the "standard of care" in Varsity All-star cheer, falsely representing Defendants' oversight of coaches, choreographers, and other vendors operating within the network. Moreover, Plaintiffs allege that these Defendants willfully failed to perform this safety function, as it would negatively impact the network's profitability.

These allegations against Defendants Varsity Spirit, LLC, Varsity Brands Holding Company, Varsity Brands, USASF, USA Cheer, Bain Capital Private Equity, and Charlesbank Private Equity are common to all Plaintiffs in the litigation. Likewise, the fees and costs paid by Plaintiffs are very much the same, or at a minimum are similar and easily ascertainable on a global scale.

Contemporaneous with their opposition to consolidation, the above referenced Defendants are not opposing a settlement class of gyms who brought antitrust claims against them related to these Defendants' monopolization over All-star cheer.  The network at issue in this antitrust litigation is the very network at issue in the Scheduled Actions.  Moreover, the actual financial harm alleged in this case, that is, the injury to business or property in the form of fees paid to, or inuring to the benefit of, the Defendants, presents common questions of both law and fact that predominate over the alleged individualized issues related to personal injury claims.

In *In re National Prescription Opiate Litigation*, 290 F. Supp. 3d at 1378-1379,  the Panel explained:

> All of the actions can be expected to implicate common fact questions as to the allegedly improper marketing and widespread diversion of prescription opiates into states, counties and cities across the nation, and discovery likely will be voluminous. Although individualized factual issues may arise in each action, such issues do not—especially at this early stage of litigation—negate the efficiencies to be gained by centralization. The transferee judge might find it useful, for example, to establish different tracks for the different types of parties or claims. The alternative of allowing the various cases to proceed independently across myriad districts raises a significant risk of inconsistent rulings and inefficient pretrial proceedings. In our opinion, centralization will substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions.

*Id.* In this case, the same goals of litigation would be served by Consolidation, and any Defendants' sentiments to the contrary ring hollow.

Plaintiffs would also submit to the Panel that Defendants Varsity Spirit, LLC, Varsity Brands Holding, Co., Varsity Brands, Jeff Webb, Bain Capital Private Equity, and Charlesbank Private Equity, all of whom now oppose consolidation, previously filed with various district courts requests to set briefing schedules related to the Scheduled Actions. Defendants USASF and USA Cheer have filed similar motions in these cases.

To support briefing schedules[1] across the various cases, Defendants alleged that there were currently numerous cases filed across multiple jurisdictions in the Midwest and Southeast and that these cases "… while not identical, contain many overlapping causes of action and complex claims for relief involving multiple defendants…", (*see* **Exhibit A**, *Jane Doe 1, et al v. Varsity Spirit et al*, 6:22-cv-02957-HMH, Defendants' Motion for Briefing Schedule [ECF No. 82] filed December

---

[1] Defendants filed requests for briefing schedules across the Scheduled Actions and in at least one such motion, actually called the litigation, "complex, multi-district litigation." *See Mary Doe as next friend of John Doe 1, et al v. Varsity Spirit, et al*, C/A No. 2:22-cv-02657-JTF-tmp, Joint Motion to Set Briefing Schedule, [ECF No. 31] filed Dec. 9, 2022.

13, 2022). The Order, which was with the consent of Plaintiffs, also represented that the parties would "continue to discuss additional possibilities for streamlining and coordinating certain aspects of this complex litigation." *Id*. a p. 2. Yet these discussions did not continue.

## II.     Defendants' Alternative of Informal Coordination Is Insufficient.

Defendants seem to concede that these cases would be well served by some form of discovery collaboration, but fail to flesh out what such informal cooperation would look like. In fact, even insofar as Defendants now suggest that such cooperation is possible, other than agreeing to stagger briefing, the only universal decision all Defendants have made in these matters is to oppose Plaintiffs' efforts to streamline the litigation by, for instance, opposing stays in the individual districts pending the Panel's decision. Defendants have encouraged the individual District Courts to move forward with rulings, and to begin the discovery process, while seeming to concede that some coordination in this regard would be appropriate.

Practically, with the number of Plaintiffs currently at 21 and the number of Defendants increasing with each new filing, informal cooperation is unlikely. Moreover, this kind of collaboration is specifically what Section 1407 was intended to address, as it provides for the transferee court to conduct pretrial proceedings and then transfer the case back to the home jurisdiction for trial.

## III.    Defendant USASF's Suggestion of the District of South Carolina As Transferee Court Is a Good Alternative.

Charleston, Columbia, and Greenville, South Carolina do not have large airports like Memphis and Orlando. This would likely very much limit the ability to find direct flights without connecting stops. However, despite their smaller scale, these airports would still operate sufficiently for travel to MDL proceedings.

Plaintiffs' counsel in the lead action practice in South Carolina. Obviously, the suggestion of Tennessee as the primary alternative was not out of any consideration of convenience for them. A predominant number of the common Defendants are headquartered in the Western District of Tennessee. Nevertheless, Plaintiffs do not oppose consolidation in South Carolina.

For the reasons set forth in Plaintiffs' Memorandum in Support, as well as those expressed herein, Plaintiff respectfully requests that this Panel find consolidation is appropriate, and consolidate the Scheduled Actions along with any later filed Actions.

**STROM LAW FIRM, LLC**

*s/ Bakari T. Sellers*
Bakari T. Sellers (SC Fed. ID No. 11099)
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
Phone: (803) 252-4800
Facsimile: (803) 252-4801
Email: bsellers@stromlaw.com

*Attorney for John Doe 1 by and through his mother, Mary Doe; N.D. Georgia; 1:22-014489*

*Attorney for John Doe 1; E.D. North Carolina; 5:22-00430*

*Attorney for Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, John Doe 1, John Doe 2, and John and Jane Does 1-10; D. South Carolina; 6:22-02957*

*Attorney for Jane Doe 8; D. South Carolina; 6:22-03508*

*Attorney for Jane Doe 9; D. South Carolina; 6:22-03509*

*Attorney for John Doe 3; D. South Carolina; 6:22-03510*

*Attorney for Mary Doe as next friend of John Doe 1, John Doe 2, John and Jane Does 1-100; W.D. Tennessee; 2:22-02657*

March 31, 2023